IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION



|  |  |
|---|---|
| CARON LABRECQUE,<br><br>    Plaintiff,<br><br>V.<br><br>THE HAMPSHIRE COMMUNITY ACTION COMMISSION, INC.<br><br>    Defendants. | CIVIL ACTION NO.<br><br>**04 - 30089 - KPN** |

**COMPLAINT
and DEMAND FOR JURY**

FILING FEE PAID:
RECEIPT # 305611
AMOUNT $ 150.00
BY DPTY CLK  WGL
DATE  5/10/04

A.  **INTRODUCTION**

1. Plaintiff Caron LaBrecque brings this action for equitable relief and compensatory and punitive damages against defendant Hampshire Community Action Commission, Inc. (hereafter "HCAC") under the Americans with Disabilities Act and the Massachusetts laws against discrimination for acts of discrimination against her on the basis of her disability.

2. The defendants wrongfully refused to engage in good faith in an interactive process with Ms. LaBrecque regarding her request for reasonable accommodations in the terms and conditions of her employment, failed to provide Ms. LaBrecque with reasonable accommodations in the terms and conditions of her employment due to her disability, and wrongfully discharged Ms. LaBrecque from her employment for the defendant.

3. Ms. LaBrecque seeks declaratory and equitable relief designed to assure that the defendant discontinues practices which discriminate against employees with qualifying disabilities.

4. Ms. Labreque also seeks compensation for the grave harm she suffered as a result of the discriminatory actions and omissions of the defendant.

B. JURISDICTION and VENUE

5. This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f) and 2000e-5(g), as well as 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. §§ 2201 and 2202.

6. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e-5(f), have occurred or been complied with:

    a. A discrimination complaint was filed with the Massachusetts commission Against Discrimination and the Equal Employment Opportunity Commission (hereafter "EEOC") on February 8, 2002, within 300 days of the discriminatory actions alleged in the charge.

    b. A notification of right to sue was received by Ms. LaBrecque from the U.S. Department of Justice on February 9, 2004.

    c. This complaint has been filed within 90 days of receipt of the right to sue notification from the Department of Justice.

7. This court has supplemental jurisdiction over related state law claims asserted by the plaintiff in this action pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) insofar as all the discriminatory employment practices alleged in this complaint were committed within the County of Hampshire in the Commonwealth of Massachusetts, the plaintiff resides in the County of Hampshire in the Commonwealth of Massachusetts, defendant HCAC, Inc. is a Massachusetts nonprofit corporation with a principal office in the County of Hampshire in the Commonwealth of Massachusetts.

## PARTIES

9. Plaintiff Caron LaBrecque (hereafter "Ms. LaBrecque") is a female citizen of the United States and the Commonwealth of Massachusetts who resides in Huntington, Massachusetts.

10. Defendant HCAC is a Massachusetts nonprofit corporation with a principal place of business at 557 Easthampton Road, Northampton, Massachusetts.

11. HCAC is a "person" within the meaning of M.G.L. c. 151B, § 1.

12. HCAC employs 6 or more employees, and is an "employer" within the meaning of M.G.L. c. 151B, § 1.

13. HCAC is a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(a).

14. HCAC is engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

15. At all times relevant to this Complaint, Ms. LaBrecque suffered from fibromyalgia.

16. Fibromyalgia is a long-term disease of the musculo-skeletal system which in the vast majority of cases is permanent.

17. The symptoms of fibromyalgia include muscle aches and pain, muscle tension, trouble sleeping, fatigue, depression, headaches, mental confusion, forgetfulness, problems thinking and putting thoughts into words, irritable bowel symptoms, and injuries that don't heal as quickly as they should.

18. The primary symptom of fibromyalgia is pain all over the body that doesn't go away easily.

19. The symptoms of fibromyalgia wax and wane. During periods when the symptoms of fibromyalgia flare up, sufferers such as Ms. LaBrecque experience increased levels of pain which can be completely debilitating.

20. At all times relevant to this complaint, the flare-up and exacerbation of Ms.LaBrecque's fibromyalgia symptoms was caused by sitting and standing for extended periods of time, repetitive motion, excess exersion, and increased levels of stress, anxiety, tension, and depression.

21. At all times relevant to this complaint, the ability of Ms. LaBrecque to continuously stand or sit in one place for even modest periods of time, walk long distances, run, lift objects, perform ordinary household functions, work in her yard, care for herself, and engage in other major life activities was substantially limited due to her fibromyalgia, particularly during those times when her symptoms were flaring up.

22. At all times relevant to this Complaint, Ms. LaBreque was under the care of physicians for her chronic fibromyalgia condition, and with the guidance and medical supervision of her physicians she was able to manage a full-time work schedule, notwithstanding her disability, by carefully monitoring her physical activities, avoiding standing or sitting in one place for too long, following a proper diet, getting sufficient rest and working regular work hours.

23. Ms. LaBrecque began working for HCAC as a Teen Coordinator in or around June 1999.

24. In December 1999, Ms. LaBrecque was given a Pantry Assistant position.

25. As of in or around August 2000, HCAC received confirmation from Ms. LaBrecque's primary care physician that Ms. LaBrecque suffered from fibromyalgia.

26. Prior to October 2001, Ms. LaBreque had an unblemished work record as an employee of HCAC, and she never received any oral or written warnings, reprimands, suspensions or other form of disciplinary action.

27. Throughout Ms. LaBreque's employment with HCAC, she was a reliable, dedicated and competent employee, and took her job responsibilities very seriously.

28. In or around July 2001, Ms. LaBrecque received a highly favorable performance evaluation, which noted among other things that she had a clear understanding of the mission of HCAC, was committed to meeting the needs of HCAC clients, she was a very hard worker, she was passionate about HCAC

5

programs and the clients she served, and she was well-organized and able to meet the responsibilities of her position.

29. In the Plan of Action for Improvement section of Ms. LaBrecque's July 2001 Performance Evaluation, Ms. LaBrecque's supervisor recommended that Ms. LaBrecque attend a communication skills training by January 31, 2002.

30. In or around September 2001, Ms. LaBrecque's supervisor advised her that she would have to attend an all-day training event in Springfield, Massachusetts on November 28, 2001 entitled "Communicating with Tact and Skill for Managers and Supervisors."

31. The all-day training event would have required that she sit and/or stand for extended periods of time during the course of the training, in addition to driving at least forty-five minutes to one hour each way.

32. At the time Ms. LaBrecque was instructed to attend the all-day training, she had been suffering from fibromyalgia for approximately eight years, and she knew from painful experience that she could not withstand a full day of sitting and/or standing in one place for extended periods of time.

33. Ms. LaBrecque immediately contacted her supervisor and reminded him that she suffered from fibromyalgia and that she would be unable to withstand so much sitting over such an extended period of time. She also questioned whether the training was appropriate for her insofar as she was not a supervisor or manager.

33. Ms. LaBrecque's supervisor responded by requesting that she supply him some medical documentation indicating her restrictions.

6

34.  On October 2, 2001, Ms. LaBrecque supplied her supervisor with a note from her doctor stating that she could only sit for one to two hours at a time.

35.  One day after receiving the note from Ms. LaBrecque's physician, Ms. LaBrecque's supervisor issued her a written warning for insubordination and advising her that if she failed to attend the all-day communication skills training on November 28, 2001.

36.  The action of Ms. LaBRecque's supervisor in issuing a written warning one day after she had submitted medical documentation supporting her request for a reasonable accommodation was taken by her supervisor in retaliation for Ms. LaBrecque engaging in conduct which is protected under state and federal laws against discrimination.

37.  Ms. LaBrecque consulted with her primary care physician who authorized two separate written communications to HCAC stating that Ms. LaBrecque was unable

38.  In a good faith effort to find reasonable alternatives to the all-day training, Ms. LaBrecque investigated other training options and identified other training options which were not specifically targeted for supervisors and managers and which she would have been able to tolerate with her disability because they were shorter in duration, could be conducted on-site in HCAC facilities, and/or involved other training approaches such as video or audio tape recordings combined with written training materials.

39.  Ms. LaBrecque compiled materials describing the other training options and presented these materials and alternative suggestions to HCAC.

7

40. HCAC summarily rejected the alternative trainings suggested by Ms. LaBrecque without conducting any investigation into their feasibility, effectiveness, appropriateness or cost.

41. As a last resort, Ms. LaBrecque agreed that she would attend the all-day training in Springfield, as instructed, but requested that HCAC arrange a room for her at the Holiday Inn where the training was being conducted, so that she could lie down during the lunch break and other scheduled breaks in the training, and at other periods during the day as needed, depending upon the level of pain she was experiencing.

42. HCAC refused Ms. LaBrecque's request for a room in which to rest during the all-day training, and insisted that Ms. LaBrecque attend the training without such an accommodation.

43. Without any medical basis whatsoever, and in direct contradiction of express representations by Ms. LaBrecque and her medical providers about the amount of sitting and standing she could tolerate during the course of a day, HCAC concluded that permitting Ms. LaBrecque to stand in the back of the room where the training was being conducted at intervals during the course of the all-day training was a sufficient accommodation of her disability.

44. Knowing that she would be unable to withstand the full day of training and the the hour and a half to two hours of driving, even if she were permitted to stand for periods of time during the training, Ms. LaBrecque did not attend the training on November 28, 2001.

45. By letter dated November 30, 2001, HCAC terminated Ms. LaBrecque's employment for failing to attend the training.

46. It would not have imposed an undue hardship on HCAC to accommodate Ms. LaBrecque's disability by exploring other training options which would not have threatened to exacerbate the painful symptoms of Ms. LaBrecque's fibromyalgia.

47. It would not have imposed an undue hardship on HCAC to accommodate Ms. LaBrecque's disability by arranging for a room in which Ms. LaBrecque could lie down and rest during the all-day training in Springfield.

48. At all times relevant to this Complaint, Ms. LaBrecque was fully able to perform the essential functions of her job with reasonable accommodations of her disability from HCAC.

49. At all times relevant to this Complaint, Ms. LaBrecque was fully able and willing to attend and participate in appropriate training events with reasonable accommodations of her disability from HCAC.

50. At all times relevant to this Complaint, HCAC failed and refused to engage in good faith in an interactive process with Ms. LaBrecque in order to determine an appropriate reasonable accommodation of her disability.

51. The discriminatory actions and omissions of HCAC were undertaken with reckless indifference to and disregard for the protected rights of Ms. LaBrecque under the Americans with Disabilities Act and the Massachusetts laws against discrimination.

### FIRST CLAIM FOR RELIEF: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF 42 U.S.C. § 12112

52.     Plaintiff Caron LaBrecque repeats the allegations set forth in paragraphs 1 through 51 above, and incorporates those allegations as if fully set forth herein.

53.     The actions and omissions of the defendants constitute unlawful discrimination against Ms. LaBrecque on the basis of her disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112.

54.     The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Ms. LaBreque to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

### SECOND CLAIM FOR RELIEF: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF M.G.L. c. 151b, § 4(16)

55.     Plaintiff Caron LaBrecque repeats the allegations set forth in paragraphs 1 through 54 above, and incorporates those allegations as if fully set forth herein.

56.     The actions and omissions of the defendants constitute unlawful discrimination against Ms. LaBrecque on the basis of her disability, in violation of M.G.L. c. 151b, § 4(16).

57.     The discriminatory actions and omissions of the defendant have caused, continue to cause and will cause Ms. LaBreque to suffer substantial damages for lost wages and income, the loss of employment benefits, and other

pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

### FOURTH CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF 42 U.S.C. § 12203

58. Plaintiff Caron LaBrecque repeats the allegations set forth in paragraphs 1 through 57 above, and incorporates those allegations as if fully set forth herein.

59. The defendant retaliated against Ms. LaBrecque for asserting her rights under the Americans with Disabilities Act in violation of Section 503(a) of the ADA, 42 U.S.C. § 2203.

60. The retaliatory actions of the defendant were taken with malice or with reckless indifference to the federally protected rights of Ms. LaBrecque under the ADA.

61. The retaliatory actions of the defendant have caused, continue to cause and will cause Ms. LaBrecque to suffer substantial damages for lost wages and income, the loss of employment benefits such as group health insurance, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

### FOURTH CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF M.G.L. c. 151B, § 4(4)

62. Plaintiff Caron LaBrecque repeats the allegations set forth in paragraphs 1 through 61 above, and incorporates those allegations as if fully set forth herein.

63. The retaliatory actions of the defendant were taken with malice or with reckless indifference to the federally protected rights of Ms. LaBrecque under the ADA.

64. The retaliatory actions of the defendant have caused, continue to cause and will cause Ms. LaBrecque to suffer substantial damages for lost wages and income, the loss of employment benefits such as group health insurance, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

## PRAYER FOR RELIEF

Plaintiff Caron LaBrecque prays the Court to grant her the following relief:

1. That the plaintiff be awarded appropriate injunctive relief designed to ensure that the defendant discontinue its discriminatory practices.

2. That the plaintiff be awarded compensatory damages in an amount to be determined at trial in this matter, plus appropriate interest on any such award.

3. That the plaintiff be awarded punitive damages in an amount to be determined at trial in this matter.

4. That the plaintiff be awarded reasonable attorney's fees, together with litigation expenses and costs of suit.

5. That the plaintiff be awarded such other relief as the Court deems just and proper.

## DEMAND FOR JURY

Plaintiff Caron LaBrecque demands trial by jury on all triable issues.

Respectfully submitted,

PLAINTIFF CARON LABRECQUE
By her attorney,

Dated: May 10, 2004

_____
Hugh D. Heisler
BBO # 563925
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 215
Springfield, MA 01103
(413) 788-7988